Sheehan & Associates, P.C.
Spencer Sheehan
spencer@spencersheehan.com
(516) 303-0552

United States District Court
Eastern District of New York                                    1:19-cv-01248

| | |
|---|---|
| Walter Faison individually and on behalf of all others similarly situated | |
| Plaintiff | |
| - against - | Complaint |
| L & K Coffee Co., L.L.C. | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.  L & K Coffee Co., L.L.C. ("defendant") sells coffee products under the Magnum Exotics label, available to consumers nationwide at brick-and-mortar retailers including Costco, Walmart, T.J. Maxx and Marshalls, third-party websites and directly from defendant's website.

2.  The Products are represented to contain non-insignificant quantities of Kona coffee.

3.  The representations are expressed on the packaging and defendant's website, and include "Kona High Mountain Coffee," "Certified," "Kona Blend Coffee," "Grown high in the mountains of Hawaii, this blended coffee has the perfect balance of light taste, full body and moderate acidity," and "100% High MT. Arabica Coffee" and imagery of tropical beaches, humming and toucan birds and hibiscus flowers.



4. However, the representations are misleading because the Products' composition is different from what a reasonable consumer would expect given the labels and marketing.

5. Approximately 2.7 million pounds of Kona coffee is harvested each year, compared to 20 billion pounds of green coffee – 0.01% of worldwide coffee production.

6. The term "Kona" tells consumers their coffee comes from the distinctive geographic region in the Kona District on the Big Island of Hawaii.

7. Kona coffee's distinctive qualities are due to the unique humidity and rainfall imparted by the region's proximity to the Pacific Ocean.

8. The volcanic soil and elevation in which the coffee is grown imparts distinct flavor tones to Kona coffee, a result of the internal composition of the coffee beans.

9. Kona coffee can be distinguished by elemental and isotopic analysis, which tests for the concentration ratios of various chemical elements identified as markers for authenticity.

10. These include ratios between the concentration of strontium (Sr) and zinc (Zn), barium (Ba) and nickel (Ni), cobalt (Co) and zinc (Zn) and manganese (Mn) and nickel (Ni).

11.     Recent scientific testing on the authenticity of Kona coffee has used strontium isotopes and hydrogen and oxygen isotopes.

12.     Where a sample contains reasonable and non-insubstantial amounts of Kona coffee, these ratios will fall within a narrow range and can be plotted on a scatter plot, to indicate concentration ratios consistent with Kona coffee, derived from the testing of over one hundred verified samples.

13.     The testing results in the following two tables compares concentration ratios on a scatter plot, with the blue dots representing authentic Kona coffee and the red diamonds representing the Products.

14.     The first graph reveals the Products' concentration ratios of strontium-to-zinc and barium-to-nickel are outside the range of authentic Kona.



15.     The second graph displays the concentration ratios of cobalt-to-zinc and manganese-to-nickel, which support the inferences of the first graph.



16. Authentic Kona has an average of less than forty times (40x) as much manganese as nickel while the Products' samples range as high as one hundred forty-five times (145x) as much manganese as nickel leads to the conclusion.

17. A reasonable consumer would not expect a product labeled a Kona blend to contain 100% Kona, but would expect an amount significant enough to characterize the overall blend, and that amount is absent from the Products.

18. The Products contain other representations which are misleading and deceptive.

19. Excluding tax, the Products cost no less than $6.99, a premium price compared to other similar products.

Jurisdiction and Venue

20. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

21. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

22. This court has personal jurisdiction over defendant because it conducts and transacts

4

business, contracts to supply and supplies goods within New York.

23. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

24. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

25. Plaintiff is a citizen of Queens County, New York.

26. John and Jane Doe plaintiffs are citizens of the other 49 states.

27. Defendant is a Michigan limited liability company with a principal place of business in Nunica, Michigan (Ottawa County) and upon information and belief, no member is a citizen of this state.

28. During the class period, plaintiffs purchased one or more Products for personal consumption, for no less than $6.99, excluding tax, within this district and/or State.

29. Plaintiff paid this premium because prior to purchase, plaintiffs saw and relied on the misleading representations.

30. Plaintiffs would purchase the Products again if there were assurances that the representations were no longer misleading.

## Class Allegations

31. The classes consist of all consumers in the following states: all, New York, who purchased any Products with actionable representations during the statutes of limitation.

32. A class action is superior to other methods for fair and efficient adjudication.

33. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

34. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

35. Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

36. Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

37. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

38. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

39. Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

40. Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
and Consumer Protection Statutes of Other States and Territories

41. Plaintiff and John Doe plaintiffs representing other states, incorporates by reference all preceding paragraphs and asserts causes of action under the consumer protection statutes of all fifty (50) states, where John and Jane Doe Plaintiffs reside and have purchased the Products.

  a. Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

  b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

  c. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

  d. California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair

Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

e. Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f. Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et. seq.*;

j. Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s. Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u. Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

dd. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ee. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

ff. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

gg. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

hh. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

ii. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

jj. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

kk. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

ll. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

mm. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

nn. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

42. Defendant's representations and omissions are false, unfair, deceptive and misleading and are not unique to the parties and have a broader impact on the public.

43. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

44. Plaintiff desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

45. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

## Negligent Misrepresentation

46. Plaintiff incorporates by references all preceding paragraphs.

47. Defendant misrepresented the composition of the Products.

48. Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

49. This duty is based on defendant's purported position as a learned intermediary and an entity which has held itself out as having special knowledge in the production and sale of coffee.

50. Defendant negligently misrepresented and/or negligently omitted material facts.

51. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

52. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

## Breach of Express Warranty and Implied Warranty of Merchantability

53. Plaintiff incorporates by references all preceding paragraphs.

54. Defendant manufactures, packages, distributes and sells Products which purport to contain a non-insignificant amount of Kona coffee.

55. The Products warranted to plaintiff and class members that they possessed functional, substantive, organoleptic, sensory, physical and other attributes which they did not.

56. Defendant warranted such attributes to plaintiff and class members, when this was not truthful and was misleading.

57. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

58. The Products were not merchantable in their final sale form.

59. Plaintiff and class members relied on the claims, paying more than they would have.

## Fraud

60. Plaintiff incorporates by references all preceding paragraphs.

61. Defendant's purpose was to mislead consumers who seek products which unique and premium attributes.

62. Defendant's intent was to secure economic advantage in the marketplace against competitors.

63. Plaintiff and class members relied on the claims, paying more than they would have.

## Unjust Enrichment

64. Plaintiff incorporates by references all preceding paragraphs.

65. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, GBL and other statutory claims;

4. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated: March 3, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com


Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119

| | |
|---|---|
| 1:19-cv-01248<br>United States District Court<br>Eastern District of New York | |

Walter Faison individually and on behalf of all others similarly situated

Plaintiff

- against -

L & K Coffee Co., L.L.C.

Defendant

## Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: March 3, 2019

                                                      /s/ Spencer Sheehan
                                                      Spencer Sheehan